Rhonda Fay BUSH, Appellant,

v.

GREEN OAKS OPERATOR, INC., Appellee.

No. 05–98–00686–CV.

Court of Appeals of Texas, Dallas.

Jan. 25, 2001.

**670**

William A. Walsh, Law Office of William A. Walsh, Bowie, for Appellant.

Karen R. Miller, Jeffrey W. Shell, Burford & Ryburn, L.L.P., Dallas, for Appellee.

Before Justices MORRIS, RICHTER [1] and DODSON.[2]

## OPINION

MORRIS, Justice.

The central question in this appeal is whether the Medical Liability and Insurance Improvement Act applies to the lawsuit filed by Rhonda Fay Bush against Green Oaks Operator, Inc. The trial court dismissed Bush's case because she failed to comply with the Act's requirement that she file an expert report within 180 days after filing her suit. Bush appeals the dismissal contending in one of her five points of error that her claims are not governed by the Act. We agree with Bush, concluding she has not pleaded a "health care liability claim" and, therefore, her suit should not have been dismissed for failure to comply with the Act. We reverse the trial court's judgment and remand the cause for further proceedings.

## I.

While an inpatient at Green Oaks Hospital in Dallas, Rhonda Fay Bush was allegedly attacked and severely injured by Jeffery Gouge, a fellow patient. Bush filed suit against Green Oaks Operator, Inc. alleging that Green Oaks knew Gouge had a propensity for violent behavior and wrongfully failed to place him in a segregated "acute unit." Bush claimed Green Oaks was negligent either in failing to warn her of the known danger or in failing

---

1. Justice John Ovard participated in the original submission of this case. Since submission, Justice Ovard has retired. Justice Martin Richter has reviewed the record and the briefs in this case.

2. The Honorable Carlton B. Dodson, Justice, Court of Appeals, Seventh District of Texas at Amarillo, Retired, sitting by assignment.

to maintain the premises in a safe manner or both.[3]

Approximately seven months after Bush filed her first amended original petition, Green Oaks moved to dismiss her claims under article 4590i, section 13.01(e) of the Medical Liability and Insurance Improvement Act. Green Oaks argued Bush's "health care liability claim" must be dismissed because she failed to file an expert report within 180 days after filing suit as required by section 13.01(d) of the Act. Bush responded to the motion arguing, among other things, that her lawsuit was not based on a health care liability claim, but instead was founded on theories of common law negligence and premises liability. Because she was not asserting a health care liability claim, Bush contended it was not necessary for her to meet the statutory requirements and deadlines set forth in the Act.

The trial court granted Green Oaks's motion and dismissed Bush's claims with prejudice. Bush filed a motion for new trial that was overruled by operation of law. This appeal ensued.

## II.

The Medical Liability and Insurance Improvement Act sets strict requirements for bringing health care liability claims against physicians or other health care providers. These requirements are in response to a perceived crisis in the area of medical malpractice insurance. *See* Tex.Rev.Civ.Stat. Ann. art. 4590i, § 1.02 (Vernon Supp.2001). To promote the detection and dismissal of frivolous health care claims early in the litigation process, the Act requires claimants either to file an expert report substantiating their claims within 180 days of filing suit or voluntarily dismiss their action. *Id.* § 13.01(d). Failure to comply

can result in sanctions against the claimant, including involuntary dismissal of the suit and an award of attorney's fees to the defendant. *Id.* § 13.01(e).

The effectiveness of the Act depends upon its vigilant enforcement. For this reason, Texas courts have repeatedly thwarted plaintiffs' attempts to avoid the Act by recasting their causes of action as something other than health care liability claims. *See MacGregor Med. Ass'n v. Campbell,* 985 S.W.2d 38, 40 (Tex.1998). Claimants cannot simply recharacterize a health care claim and thereby avoid the Act's standards and requirements. *See Williams v. Walker,* 995 S.W.2d 740, 741 (Tex.App.—Eastland 1999, no pet.); *Waters ex rel. Walton v. Del–Ky, Inc.,* 844 S.W.2d 250, 258 (Tex.App.—Dallas 1992, no writ).

In enforcing the Act, however, we must be equally careful not to extend the Act's reach beyond its stated bounds. Clearly, not every action taken by a health care provider or every injury suffered by a patient falls within the ambit of the Act. *See Rogers v. Crossroads Nursing Serv., Inc.,* 13 S.W.3d 417, 420 (Tex.App.—Corpus Christi 1999, no pet. h.)(patient's claim that he was injured when nursing service employee negligently allowed a heavy bag to fall on him was not covered by the Act). The Act specifically applies only to "health care liability claims." A health care liability claim is defined as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim

---

**3.** Paragraph 7 of Bush's first amended original petition reads as follows:

> At the time of the accident, Defendant Green Oaks Operator, Inc. knew or should have known of Mr. Gouge's propensity for violence and failed to warn the Plaintiff and/or failed to provide a reasonably safe

> environment for the Plaintiff. Defendant Green Oaks Operator, Inc. breached that duty in one or more of the following ways:
> a. Failing to warn Plaintiff of the known danger; and/or
> b. Failing to maintain the premises in a safe manner.

or cause of action sounds in tort or contract.

TEX.REV.CIV.STAT.ANN. art. 4590i, § 1.03(4). To determine whether a cause of action fits this definition, we look at the underlying nature of the claim. *See Sorokolit v. Rhodes,* 889 S.W.2d 239, 242 (Tex.1994).

In general, a cause of action will be considered a health care liability claim if it is based on a breach of a standard of care applicable to health care providers. *See Campbell,* 985 S.W.2d at 41. The act or omission complained of must also be an inseparable part of the rendition of medical services. *See Walden v. Jeffery,* 907 S.W.2d 446, 448 (Tex.1995). After examining the allegations stated in her amended petition, we conclude Bush has not alleged a "health care liability claim." Bush was not obligated, therefore, to submit an expert report pursuant to the Act.

Green Oaks argues that Bush's suit is covered by the Act because it is fundamentally a claim for negligent diagnosis and lack of proper treatment with respect to her assailant, Gouge. We cannot draw such a conclusion from Bush's pleading.[4] Although Green Oaks's alleged failure to provide Bush with a reasonably safe environment may ultimately involve a determination of whether the hospital breached a standard of care with respect to Gouge, Bush's claim, as pleaded, is not for negligence in her medical treatment. Moreover, any duty owed by Green Oaks to diagnose and treat Gouge properly ran to Gouge alone. *See Thapar v. Zezulka,* 994 S.W.2d 635, 637–38 (Tex.1999); *Van Horn v. Chambers,* 970 S.W.2d 542, 545 (Tex. 1998). The duty that Bush alleged Green Oaks owed to her was the duty to provide her with a reasonably safe environment or to warn her of a known danger. This duty is owed by a premises owner to an invitee; it is not a duty owed by a health care provider to a patient. *See Charrin v. Methodist Hosp.,* 432 S.W.2d 572, 574 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ).

Although Bush's amended petition is not a model of clarity, Green Oaks never filed special exceptions seeking clarification of the claims being made. Green Oaks urges us to read Bush's petition in the light most favorable to it by construing her claims to be within the scope of the Act and subject to dismissal with prejudice. To do so without Bush's petition being tested by special exceptions would be contrary to long-standing precedent that we should view pleadings liberally in favor of the pleader. *See Roark v. Allen,* 633 S.W.2d 804, 809 (Tex.1982).

Under a liberal reading of Bush's amended petition, her status as a patient at Green Oaks is not a controlling factor in her causes of action. Indeed, by her pleadings, Bush's status as a patient is irrelevant, which clearly indicates that Bush's suit is not based on a health care liability claim. None of the wrongful actions alleged by Bush involve the medical treatment she received. A health care liability claim must not only be based on the rendition of medical services, it must be based on the rendition of medical services *to the injured party.* In this case, Bush is not contending Green Oaks breached a standard of care owed to her as a patient. Rather, she is claiming she was

---

4. In addition to her allegations in paragraph 7 of her first amended original petition, Bush alleged the following in paragraph 8:

Further, Defendant Green Oaks Operator, Inc. knew of Mr. Gouge's propensity for violence. Mr. Gouge had been a patient at Green Oaks Hospital.... Mr. Gouge had been observed by hospital staff acting in a threatening manner to a guest at the hospital. Mr. Gouge was also observed making threats to hurt a staff member. Mr. Gouge was observed by Defendant Green Oaks slamming the phone down on his father. Mr. Gouge was observed attempting to kick down a metal entry door the night before the incident giving rise to this lawsuit. Defendant Green Oaks had knowledge sufficient to determine that Mr. Gouge should have been placed in the "acute unit" prior to the incident that is the basis of this lawsuit but failed to do so.

harmed by an unsafe condition created by Green Oaks at the hospital.

■ Green Oaks also attempts to bring Bush's claim within the reach of the Act by arguing her suit alleges a breach of an "accepted standard of ... safety." Although the Act includes breaches of accepted standards of safety within the definition of a health care liability claim, the term "safety" cannot be read in isolation. *Rogers*, 13 S.W.3d at 418–19. The breach must be of an accepted standard of safety within the health care industry. *Id.* Furthermore, the breach must occur as part of the rendition of medical services to the injured party. The breach alleged by Bush did not occur as part of the medical services rendered to her. And the standard of safety to be applied to her claims as presently pleaded is the one governing claims for premises liability and common law negligence.

Based on the foregoing, we conclude Bush's amended petition does not state a health care liability claim subject to the Act. Accordingly, Bush's suit should not have been dismissed for failure to comply with the Act's requirement to submit an expert report. Because we have concluded Bush's suit was improperly dismissed, it is unnecessary for us to address her remaining points of error.

We reverse the trial court's judgment and remand the cause for further proceedings.

DODSON, J. (Retired) dissenting.

DODSON, Justice (Retired), dissenting.

I respectfully dissent from the opinion of the Court. The majority opinion concludes this case does not involve a health care liability claim subject to the Medical Liability and Insurance Improvement Act (the Act), Tex.Rev.Civ.Stat.Ann. art. 4590i, § 13.01(e) (Vernon Supp.2001), and therefore reverses and remands the case to the trial court. I respectfully disagree and would overrule Bush's second point of error in which she contends the Act does not

apply. Likewise, I would overrule the remaining points of error and affirm the trial court's judgment.

The Act applies to all health care liability claims. *Id.* § 1.03(4) (Vernon Supp. 2001). A health care liability claim includes a cause of action against a health care provider for a "claimed departure from accepted standards of ... *safety* which proximately results in injury to or death of the patient." *Id.* (emphasis added). According to Bush, the Act does not apply to this case because "[t]he cause of action is not grounded in medical malpractice but in the negligence of staff personnel in permitting another patient whom the psychologist knew had a propensity for violence to be put in general population and assault [Bush]."

As aptly stated in the majority opinion, "[t]he effectiveness of the Act depends upon its vigilant enforcement." In this context, claimants cannot simply recast a health care liability claim in terms of a general negligence or premises liability claim in order to avoid the Act's statutory requirements. *See Sorokolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex.1994); *Williams v. Walker*, 995 S.W.2d 740, 741 (Tex. App.—Eastland 1999, no pet.). I agree with the majority that in determining whether the Act is applicable in a particular case, we look to the underlying nature of the claim. *See Sorokolit*, 889 S.W.2d at 242. A factor in determining whether the Act is applicable is whether the challenged act was "an inseparable part of the rendition of medical services." *Walden v. Jeffery*, 907 S.W.2d 446, 448 (Tex.1995).

The underlying nature of this claim is one for injuries that occurred when a psychiatric inpatient at Green Oaks, Jeffery Gouge, assaulted Bush who was also a psychiatric inpatient. In Bush's original petition, she claimed Green Oaks knew or should have known of Gouge's propensity for violence and failed to warn her or provide a reasonably safe environment. Bush asserted Green Oaks failed to main-

tain the premises in a safe manner. In alleging that Green Oaks knew Gouge had violent tendencies, Bush pleaded that Gouge was observed: (1) acting in a threatening manner to a guest at Green Oaks; (2) making threats to hurt a staff member; (3) slamming the phone down on his father; and (4) attempting to kick down a metal entry door the night before his attack on Bush. Bush further pleaded that Green Oaks should have placed Gouge in the "acute unit" of the hospital.

I conclude the above challenged acts regarding Green Oaks' failure to maintain the premises in a reasonably safe environment were inseparable parts of the rendition of Bush's medical services at Green Oaks. In the context of an inpatient psychiatric hospital, an integral aspect of the safety of patients must necessarily be keeping unstable or violent psychiatric patients separated from the nonviolent patients. Further, the claims in this case are of the type that would require expert testimony as to the appropriate standard of care in segregating patients in a psychiatric hospital and, specifically, whether segregation was warranted in this particular case.

The majority concludes Bush's status as a patient at Green Oaks is not a controlling factor in her causes of action. I respectfully disagree. Bush's medical treatment necessarily included her status as an inpatient at the hospital. She should not be able to circumvent the Act by simply taking her inpatient status out of the equation. I conclude Bush's cause of action is one for a claimed departure from accepted standards of safety which proximately resulted in Bush's injury and thus falls within the scope of the Act. *See* Tex.Rev.Civ. Stat.Ann. art. 4590i, § 1.03(4).

For these reasons, I would hold that Bush's claim is governed by the Act and thus conclude the trial court did not err in dismissing Bush's suit for failing to file an expert report. Therefore, I would overrule Bush's second point of error. I would

also overrule the remaining points of error and affirm the trial court's judgment.