**Randall JONES and Sandi Jones, Appellants,**

v.

**Mehdi KHORSANDI, M.D., Appellee.**

**No. 11–03–00144–CV.**

Court of Appeals of Texas, Eastland.

Sept. 9, 2004.

Jimmie A. Franklin, Fort Worth, Charles Richardson, Keith Ward, Stephanie Dinsmore Phipps, Richardson, Stoops, Richardson & Ward, Tulsa, OK, for appellants.

Charles G. Bell, Steve Nagle, Kerri L. Stampes, Gwinn & Roby, Dallas, for appellee.

Panel consists of ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## Opinion

W.G. ARNOT, III, Chief Justice.

Randall Jones and Sandi Jones sued Dr. Mehdi Khorsandi and the North Central Medical Center alleging that Randall was sexually assaulted by Dr. Khorsandi while Randall was a patient at the medical center. The plaintiffs did not file an expert report under former TEX.REV.CIV. STAT. art. 4590i, § 13.01 (2003).[1] Conse-

---

1. TEX.REV.CIV.STAT. art. 4590i, the Medical Liability and Insurance Improvement Act,

quently, the Medical Center moved for dismissal. On January 14, 2003, the trial court granted the Medical Center's motion, dismissed the claims against the Medical Center, and ordered that those claims be severed from the ones against Dr. Khorsandi.[2] Subsequently, after receiving notice that the plaintiffs were filing a nonsuit but intended to refile the suit at a later time, Dr. Khorsandi filed a motion for dismissal with prejudice pursuant to Article 4590i, section 13.01. The trial court granted Dr. Khorsandi's motion, dismissed the claims with prejudice, and ordered the plaintiffs to pay $20,969 in attorney's fees and costs to Dr. Khorsandi. The plaintiffs appeal. We reverse and remand.

The plaintiffs present 11 issues for review. The first six issues involve the taking of a nonsuit by the plaintiffs against Dr. Khorsandi. In these issues, the plaintiffs assert that their nonsuit was effective prior to the filing of the doctor's motion to dismiss with prejudice. In the next three issues, the plaintiffs argue that, even if their nonsuit was ineffective, the trial court erred in granting the doctor's motion to dismiss because the plaintiffs had alleged intentional tort claims against Dr. Khorsandi that do not fall within Article 4590i, section 13.01. In their tenth issue, the plaintiffs argue that the trial court erred in refusing to reinstate the case and grant the plaintiffs an additional 30 days to file an expert report. In their final issue, the plaintiffs contend that the award of attorney's fees was erroneous.

### Effectiveness of Nonsuit

With respect to their nonsuit, the plaintiffs specifically argue as follows. In the first issue, the plaintiffs contend that their nonsuit effectively terminated the trial court's jurisdiction over the plaintiffs and that, therefore, the trial court erred in denying the plaintiffs' special appearance. In the second issue, they argue that the trial court erred in failing to properly apply the mailbox rule[3] to the filing of their notice of and motion for nonsuit. In the third issue, the plaintiffs contend that the trial court abused its discretion in failing to enter an order on their motion for nonsuit. In the fourth issue, the plaintiffs assert that the trial court failed to follow the rules and caselaw regarding nonsuits. In the fifth issue, the plaintiffs assert that the trial court erred in its interpretation of TEX.R.CIV.P. 162 regarding the right to take a nonsuit. In the sixth issue, the plaintiffs contend that the trial court erred in granting Dr. Khorsandi's motion to dismiss with prejudice because the plaintiffs' nonsuit was effective prior to the filing of the doctor's motion.

■ Whether the plaintiffs' nonsuit was effective prior to the filing of Dr. Khorsandi's motion to dismiss depends on which party won the "race to the courthouse" created by Article 4590i, section 13.01. *See Martinez v. Lakshmikanth,* 1 S.W.3d 144, 148 (Tex.App.-Corpus Christi 1999, pet'n den'd). The record shows that, on January 30, 2003, the plaintiffs' attorney, Stephanie Dinsmore Phipps with the law firm of Richardson, Stoops, Richardson & Ward of Tulsa, Oklahoma, notified counsel for Dr. Khorsandi that the plaintiffs were filing a motion for nonsuit. The notice of and motion for nonsuit without prejudice

---

was repealed effective September 1, 2003, but it was still in effect at the time this lawsuit was filed. We note that the current version of the medical liability provisions have been codified at TEX. CIV. PRAC. & REM. CODE ANN. ch. 74 (Vernon Pamph. Supp.2004).

2. Neither the Medical Center nor the claims against the Medical Center are before this court in this appeal.

3. TEX.R.CIV.P. 5.

was faxed to Dr. Khorsandi's counsel at 11:26 a.m. on January 30, and an original was sent to counsel by certified mail on the same day. Also on January 30, the notice of and motion for nonsuit was sent by certified mail through the United States Postal Service to the district court coordinator. The plaintiffs' notice of and motion for nonsuit was received on February 3, 2003, and file-stamped on February 4, 2003.

The record also shows that, on January 30, after receiving the fax from plaintiffs' counsel, one of Dr. Khorsandi's counsel, Steve Nagle, called Phipps and asked "in all candidness" whether the plaintiffs intended to refile. Phipps responded in the affirmative. Subsequently, Nagle drove to the courthouse and placed the doctor's motion to dismiss with prejudice in the drop box at the clerk's office between 4:30 and 5:00 p.m. on January 30. The motion filed by Nagle was file-stamped at 4:45 p.m. on January 30.

Even if we were to interpret the mailbox rule as plaintiffs argue that we should, we cannot find that the plaintiffs' nonsuit was filed prior to Dr. Khorsandi's motion to dismiss. The plaintiffs argue that their nonsuit was "filed" or should have been "deemed filed" when it was placed in the United States mail on January 30. *See, e.g., Warner v. Glass,* 135 S.W.3d 681 (Tex.2004)(inmate's petition deemed filed when placed with prison officials for mailing); *Bailey v. Hutchins,* 140 S.W.3d 448 (Tex.App.-Amarillo 2004, no pet'n h.)(petition deemed filed on day of mailing for purposes of effective date of applicable statute); *Thomas v. Gelber Group, Inc.,* 905 S.W.2d 786, 789 (Tex.App.-Houston [14th Dist.] 1995, no writ)(answer deemed filed when mailed even though it had not been received by court when default judgment was rendered); *Milam v. Miller,* 891 S.W.2d 1 (Tex.App.-Amarillo 1994, writ

ref'd)(answer was timely and was deemed filed when it was deposited in the mail); *Danesh v. Houston Health Clubs, Inc.,* 859 S.W.2d 535 (Tex.App.-Houston [1st Dist.] 1993, writ ref'd)(plaintiff brought suit prior to expiration of statute of limitations by mailing the petition pursuant to Rule 5 even though the district clerk received and file-stamped the petition after the expiration of limitations). However, there is nothing in the record indicating what time the plaintiffs' nonsuit was deposited in the United States mail. The postmark reflects the date of January 30, but the time of day was not recorded. The affidavits provided by plaintiffs' counsel also do not reflect the time of day that the nonsuit was mailed but, rather, reflect the time that the fax was sent to defense counsel. Consequently, the plaintiffs have not demonstrated that they deposited their notice of and motion for nonsuit in the United States mail prior to 4:45 p.m. on January 30, the time indicated on the file-stamp on Dr. Khorsandi's motion to dismiss.

Because the plaintiffs did not show that their notice of and motion for nonsuit had been filed prior to the time Dr. Khorsandi filed his motion to dismiss with prejudice, which asserted a claim for attorney's fees, the plaintiffs' nonsuit could not prejudice the right of Dr. Khorsandi "to be heard on a pending claim for affirmative relief" pursuant to Rule 162. Although we do not condone the gamesmanship that may have occurred in this case, we hold that the trial court did not err in denying the plaintiffs' special appearance; in failing to enter an order on the plaintiffs' motion for nonsuit; in interpreting and applying the mailbox rule, other applicable rules, or case law; or in determining that Dr. Khorsandi's motion to dismiss was filed prior to the time the plaintiffs' nonsuit was filed. The first, second, third, fourth, fifth, and sixth issues are overruled.

*Merits of the Dismissal under*
*Article 4590i*

In the seventh, eighth, and ninth issues, the plaintiffs specifically contend that the trial court erred in granting Dr. Khorsandi's motion to dismiss with prejudice, effectively ruling that all of the plaintiffs' claims were encompassed within Article 4590i; that the trial court erred in dismissing the intentional tort claims against Dr. Khorsandi because such claims were filed timely and do not fall within the scope of Article 4590i; and that the trial court erred in dismissing all of the plaintiffs' intentional tort causes of action against Dr. Khorsandi because these causes of action are not subject to the expert report requirement of Article 4590i.

■ A dismissal under Article 4590i is generally reviewed under an abuse of discretion standard. *American Transitional Care Centers of Texas, Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001); *Buck v. Blum,* 130 S.W.3d 285, 290 (Tex.App.-Houston [14th Dist.] 2004, no pet'n); *Ponce v. El Paso Healthcare System, Ltd.,* 55 S.W.3d 34, 36 (Tex.App.-El Paso 2001, pet'n den'd). However, when the issue involves the applicability of Article 4590i to the claim and requires an interpretation of the statute, we must apply a de novo standard of review. *Buck v. Blum, supra; Ponce v. El Paso Healthcare System, Ltd., supra.*

■ Article 4590i, section 13.01(d) provided that a claimant must furnish an expert report to counsel for each defendant not later than the 180th day after the date on which the health care liability claim was filed. Article 4590i, section 1.03(a)(4) defined "healthy care liability claim" as follows:

"Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

In order to determine whether the plaintiffs asserted a health care liability claim, we must examine the underlying nature of the allegations. *Buck v. Blum, supra* at 290; *Bush v. Green Oaks Operator, Inc.,* 39 S.W.3d 669, 672 (Tex.App.-Dallas 2001, no pet'n). Generally, a cause of action will be considered a health care liability claim if it is based on a breach of the applicable standard of care for health care providers or if the act or omission complained of was "an inseparable part of the rendition of medical services." *Buck v. Blum, supra* at 291; *Rubio v. Diversicare General Partner, Inc.,* 82 S.W.3d 778 (Tex.App.-Corpus Christi 2002, pet'n granted); *Bush v. Green Oaks Operator, Inc., supra* at 672; *Williams v. Walker,* 995 S.W.2d 740, 741 (Tex.App.-Eastland 1999, no pet'n).

Claimants may not recast a health care liability claim as some other type of claim in an attempt to avoid the application of Article 4590i. Texas courts have repeatedly thwarted such attempts. *See MacGregor Medical Association v. Campbell,* 985 S.W.2d 38, 40 (Tex.1998); *Sorokolit v. Rhodes,* 889 S.W.2d 239 (Tex.1994); *Bush v. Green Oaks Operator, Inc., supra* at 671; *Williams v. Walker, supra.* We note, however, that Article 4590i should not be extended beyond its stated bounds because not every action taken by a health care provider or every injury suffered by a patient falls within the scope of Article 4590i. *Bush v. Green Oaks Operator, Inc., supra; Rogers v. Crossroads Nursing Service, Inc.,* 13 S.W.3d 417, 420 (Tex.App.-Corpus Christi 1999, no pet'n); *see Buck v. Blum, supra* at 291 n. 6.

■ The record in this case shows that the plaintiffs sued Dr. Khorsandi alleging claims for intentional infliction of emotional distress and assault and battery. The plaintiffs' petition alleged that Randall went to the Medical Center's emergency room and sought treatment for acute abdominal pain. The petition further alleged that, while Randall was under the influence of medication, "he was the subject of unwanted and offensive sexual advances perpetrated by" Dr. Khorsandi. These unwanted sexual advances allegedly occurred over a three-day period and ultimately resulted in "vile sexual assault and battery" on the third day.

We hold that the claims asserted by the plaintiffs were not health care liability claims and, therefore, that the plaintiffs were not required to furnish an expert report. The claims involving Dr. Khorsandi's alleged sexual advances and sexual assault of his patient are similar to the claims asserted in *Bush, Rubio,* and *Buck.*[4] In these cases, the courts determined that Article 4590i did not apply because the claims were not health care liability claims. In *Bush,* an inpatient sued the hospital after she was attacked by a fellow patient. *Bush v. Green Oaks Operator, Inc., supra.* In *Rubio,* a nursing home resident sued the nursing home after she was sexually assaulted by another resident. *Rubio v. Diversicare General Partner, Inc., supra.* In *Buck,* a patient sued the hospital and a neurologist for assault and battery after the neurologist placed his penis in the patient's hand during an exam. Although the cause against the neurologist had been severed from the one against the hospital, which was at issue on appeal, the court of appeals noted that the neurologist's "al-

leged assaultive conduct would certainly not be considered an inseparable part of the rendition of medical care." *Buck v. Blum, supra* at 291–92 n. 6.

As in *Bush, Rubio,* and *Buck,* the nature of the allegations against Dr. Khorsandi do not involve a breach of the applicable standard of care for health care providers, and the alleged sexual assault is not "an inseparable part of the rendition of medical services." Because the plaintiffs' claims against Dr. Khorsandi were not health care liability claims, the provisions of Article 4590i did not apply. Consequently, the trial court abused its discretion in dismissing with prejudice the plaintiffs' claims against Dr. Khorsandi for failing to furnish an expert report. We sustain the plaintiffs' seventh, eighth, and ninth issues.

In their tenth issue, the plaintiffs argue that the trial court erred in refusing to reinstate the case and grant an additional 30 days to obtain an expert report pursuant to Article 4590i. We need not address this issue because, as discussed above, the plaintiffs' claims against Dr. Khorsandi fall outside the scope of Article 4590i. *See* TEX.R.APP.P. 47.1.

In their eleventh issue, the plaintiffs contend that the trial court erred in awarding attorney's fees to Dr. Khorsandi. Based upon our decision that the trial court erred in granting the doctor's motion to dismiss with prejudice, we must also reverse the trial court's award of attorney's fees. Article 4590i, section 13.01(e) provided that attorney's fees were required to be awarded as sanctions when a claimant failed to provide an expert report for any defendant. Because we held that

---

4. Compare these cases to *Williams,* in which an alleged assault and battery was inseparable from medical services where patient claimed that a physician performed a medical procedure without the patient's consent. In that case, we held that Article 4590i applied because the patient's claims were inseparable from the rendition of medical services. *Williams v. Walker, supra* at 742.

an expert report was not required and that Dr. Khorsandi was not entitled to a dismissal under Article 4590i, section 13.01, we also hold that the award of attorney's fees was erroneous. The plaintiffs' eleventh issue is sustained.

The judgment of the trial court is reversed, and the cause is remanded to that court for further proceedings.